Lucy Shanholtz, Defendant in Error, v. B. H. Hellen
and Myrtle E. Hellen, trading as Michigan Central
Park Company, Plaintiffs in Error.

Gen. No. 20,465.    (Not to be reported in full.)

Error to the Municipal Court of Chicago; the Hon. JOSEPH E.
RYAN, Judge, presiding. Heard in the Branch Appellate Court at
the October term, 1914. Reversed with finding of facts. Opinion
filed October 5, 1915.

### Statement of the Case.

Action by Lucy Shanholtz, plaintiff, against B. H.
Hellen and Myrtle E. Hellen, trading as the Michigan
Central Park Company, defendants, in the Municipal
Court of Chicago, to recover for money had and re-
ceived.    To reverse a judgment for plaintiff for
$759.50, defendants prosecute this writ of error.

Plaintiff's amended statement of claim alleged, in
substance, that prior to March 14, 1911, defendants
were engaged in Chicago in selling Michigan lands,
and represented to plaintiff that her son-in-law, one
Asa H. Daugherty, had purchased a parcel of land in
Crawford county, Michigan, and further represented,
in order to induce plaintiff to purchase land and to get
some of plaintiff's money, that they had for sale a lot
of land *adjoining* that of Daugherty, which was "of a
good quality and of a rich and productive soil," of
the same character as land in the vicinity on which had
been raised sixty to sixty-five bushels of potatoes to
the acre, and that the parcel offered, which was of
forty acres, was worth $800. It was also alleged that
at this time the plaintiff knew nothing of the value of
character of land in Crawford county, and relying on
defendant's representations agreed to purchase the
land for $800, and paid defendants' $400 down; that
on April 4th plaintiff, relying on said representations,

commenced to clear the land and caused a house to be erected thereon; that all the representations made were false and fraudulent, and were intended to deceive plaintiff; that the land purchased did not adjoin any land purchased by said Daugherty, and that its soil was not as represented, not yielding more than five to ten bushels of potatoes to the acre. The statement of claim further alleged that plaintiff after discovering the fraud removed from the land in the fall of 1911, and notified defendants that she would make no further payments; that defendants on April 29, 1913, notified plaintiff that the contract would be cancelled unless payment was made within ten days; and that plaintiff has abandoned the land and buildings because of the fraud, and has never paid more than $400 on the contract.

In defendants' affidavit of merits there is a denial that defendants received any money from plaintiff without consideration, or that defendants made false representations to plaintiff. It is further alleged, in substance, that plaintiff executed a written contract for the sale of the land in question, and entered and made improvements thereon, and that thereafter plaintiff forfeited all rights under the contract by failing to make payment as provided in the contract, whereby defendants had the right to declare the contract void, which was done on or about April 29, 1913.

The main witnesses for plaintiff were plaintiff, said Daugherty and plaintiff's daughter, wife of said Daugherty, and one Bleier. Daugherty testified, in substance, that on November 17, 1910, he, with three other men, signed a contract for the purchase of the land which defendants represented to plaintiff had been purchased by him, although he later claimed that he had selected another parcel. Plaintiff testified that she had been farming all her life, and in March, 1911, she went to defendants' office, and informed defendant B. H. Hellen that she wanted to purchase the land ad-

joining that of Daugherty, and said defendant stated that though the land was raw and uncultivated, there was "black, sandy loam," and was "good soil and would produce almost anything," and that "almost all kinds of grain would grow there." Plaintiff testified that on March 14, 1911, she signed a contract for the purchase of the land, which contract provided that in case the payments were not made as provided in the contract, defendants should have the right to declare the contract void, and take immediate possession of the property and remove plaintiff therefrom. In such case defendants were to retain any payments made on the contract, and all improvements made on the land, as stipulated damages.

Plaintiff also testified that at the time the contract was made she did not know whether her son-in-law purchased the identical land adjoining her tract, as was represented by defendants, but supposed the land was four or five miles from Roscommon, Michigan, and that she did not see the land until after the contract was signed; further, that when she did see the land, on April 4, 1911, she found it "raw timber land, with small trees and underbrush" on it, but did not make "very much" of an examination of the soil, though there was nothing to hinder her from so doing; that plaintiff erected a house, in which she and her husband lived for a time, and, after clearing the land, planted potatoes, corn and beans; that before she abandoned the land she found that the soil was "just solid, yellow sand."

Plaintiff's daughter, Mrs. Daugherty, testified that in June, 1911, the soil was all "solid, yellow sand," and she thought it worth little. Witness Asa Daugherty further testified that he acted as agent in selling the land to plaintiff, and received a receipt for $40 from defendants to apply on payments due under his own contract for assisting in the sale to plaintiff; that after contracting with defendants for the land adjoining

plaintiff's land, he, in company with plaintiff, called on defendant B. H. Hellen, claiming that defendants had sold him the wrong land, which defendants denied, resulting in his bringing suit against defendants to recover back the money paid. He also testified that the soil of plaintiff's land was yellow sand.

Witness Bleier, who sold the land to Daugherty for defendants, testified that no intentional fraud was committed as to him, and if there was a mistake made as to the land which Daugherty selected, it was a mistake of Daugherty's and not that of defendants, whose practice was at that time, where a buyer wanted to exchange his parcel for another of equal size, to make the exchange.

Defendant B. H. Hellen testified that he had been selling Michigan lands for about thirteen years, the lands being situated in Roscommon and Crawford counties; that he recalled a contract with Daugherty, which had been drawn up by Bleier, at the time of which said defendant had no knowledge that Daugherty had selected or desired any other land than that which he bought, and said defendant only became aware of such claim when Daugherty visited him; that he acted in good faith in selling plaintiff her land, supposing that it did adjoin that of Daugherty as he represented; that he knew from personal inspection that the soil of plaintiff's land was not yellow sand, as testified to, and that he knew it was a good soil for apples and corn, and would produce almost any crop suited to the climate; that less than one acre of the land sold to plaintiff had in 1913 produced about fifty bushels of corn. As to the character and quality of the soil, said defendant's testimony was corroborated by many witnesses.

Plaintiff also testified that about the time of the visit to defendant B. H. Hellen in company with Asa Daugherty, she again visited said defendant and asked him to deed her twenty acres of the land purchased,

and to take back and sell for her benefit the other twenty acres. She also testified that on June 6, 1912, she wrote to said defendant a letter, which was in part as follows: "The lowest I will take for the 20 acres of land that I have already paid for is $650. * * * You can sell the other twenty acres for what you please. * * * I would like a deed and abstract for that 20. * * * That would give me a chance to trade it here and send you buyers, for there is lots of people round here who would like to go there. * * * Sell the land as soon as you can and get as much down on it for me as you can, and the rest in monthly payments." This suit was commenced on June 4, 1913.

Louis J. Pierson, for plaintiffs in error.

No appearance for defendant in error.

Mr. Presiding Justice Gridley delivered the opinion of the court.

## Abstract of the Decision.

VENDOR AND PURCHASER, § 336*—*when evidence insufficient to show misrepresentation.* In an action for money had and received, to recover back money paid under a contract for the sale of land, alleged to have been procured by fraud, where the amount sought to be recovered back was one-half the contract price, *held* that evidence was insufficient to prove that defendants made such misrepresentations as to entitle plaintiff to recover, but rather tended to show that plaintiff was sick of her bargain, it appearing that no claim of fraud was made or suit brought for more than a year after such fraud was alleged to have been discovered, during which time plaintiff repeatedly urged defendants to deed to her one half the land and to take back the other half fixing a sale price for the half she wished deeded to her which was in excess of half of the contract price.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.